NOT FOR PUBLICATION                                         (Docket No. 22)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____
                                                 :
ROBERT N. BUCCILLI, et al.,                      :
                                                 :
                Plaintiffs,                       :        Civil No. 08-4214 (RBK/KMW)
                                                 :
        v.                                        :        **OPINION**
                                                 :
NATIONAL RAILROAD PASSENGER                      :
CORPORATION, t/a, AMTRAK                          :
NATIONAL RAILROAD PASSENGER                      :
CORPORATION, a/k/a, AMTRAK,                       :
A DISTRICT OF COLUMBIA                            :
CORPORATION, et al.,                             :
                                                 :
                Defendants.                       :
_____:

**KUGLER**, United States District Judge:

        This matter comes before the Court upon a motion by Defendants National Railroad

Passenger Corporation, which trades as Amtrak National Passenger Corporation ("Amtrak"), and

Axis Group, Inc. ("Axis Group") for a declaration that the law of the Commonwealth of Virginia

applies the issue of damages availability in this consolidated negligence action brought by

Plaintiffs Robert N. Buccilli and Farm Family Casualty Insurance Company.[1]  For the reasons

expressed below, the Court will grant Defendants' motion.

_____

        [1]  On February 3, 2009, Plaintiff Farm Family Casualty Insurance Company filed a
Complaint against Amtrak and Axis Group as subrogee of Plaintiff Robert Buccilli.  On October
21, 2009, the Farm Family action was consolidated with the instant matter.

1

I.      **BACKGROUND**

Amtrak operates a train service known as the Auto Train.  As the name suggests, the Auto Train affords passengers the opportunity to ride an Amtrak train with their automobiles.  The Auto Train is the only route in the Amtrak system that provides this service.  The Auto Train operates non-stop service between Lorton, Virginia and Sanford, Florida.  Amtrak has contracted with Defendant Axis Group to load and unload motor vehicles onto trains at the Lorton Station.

On February 21, 2007, Plaintiff Robert N. Buccilli intended to ride the Amtrak Auto Train.  He arrived at the Lorton Station and was instructed by Axis employees to remove his luggage from his truck so that the employees could load the truck onto the train.  As Plaintiff complied with these instructions, an Axis employee began driving Plaintiff's truck towards the train for loading.  Plaintiff's left hand caught on his truck, and as a consequence, Plaintiff was drug for thirty to sixty feet and sustained injuries.

On August 20, 2008, Plaintiff filed a Complaint against Amtrak and Axis Group sounding in negligence, which was amended on order of the Court to properly allege diversity jurisdiction on September 5, 2008.  Defendants did not challenge the propriety of venue in New Jersey, but rather filed an Answer to the Amended Complaint on October 24, 2008, generally denying the allegations.  Although it appears to the Court that Defendants could have requested a transfer of the case to the Eastern District of Virginia on the basis of improper venue, Defendants failed to raise any such affirmative defense by motion or in their responsive pleadings.  As a consequence, Defendants have waived this defense.  See Fed. R. Civ. P. 12(h)(1).  Instead, Defendants filed a motion in limine requesting a declaration that the law of the Commonwealth of Virginia applies to determine the availability of damages in this matter.  Plaintiff Buccilli filed

2

a brief in opposition on August 24, 2009, to which Defendants replied on September 2, 2009.

Accordingly, the matter is ripe for the Court's consideration.

## II.   DISCUSSION

In tort actions, the Commonwealth of Virginia follows the doctrine of contributory negligence. By way of contrast, the State of New Jersey adheres to a modified comparative negligence regime. In a nutshell, Defendants argue that Virginia law should apply because all of the events giving rise to the action occurred in Virginia; whereas, Plaintiff argues that New Jersey law should apply because it is the only state with a domiciliary as a party. The Court agrees with Defendants that Virginia law should apply.

In a diversity case, a district court must apply the choice of law provisions of the forum state. Woessner v. Air Liquide, Inc., 242 F.3d 469, 472 (3d Cir. 2001) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Robertson v. Central Jersey Bank & Trust Co., 47 F.3d 1268, 1273 (3d Cir. 1995)). Because this Court is located in New Jersey, New Jersey's choice of law rules apply.

As a threshold matter, the parties disagree as to the analytical framework appropriate to the instant conflict of laws analysis. Plaintiffs correctly note that New Jersey has abandoned the lex loci delicti approach of the First Restatement. See P.V. v. Camp Jaycee, 962 A.2d 453, 457 (N.J. 2008). Contrary to Plaintiffs' assertions, however, New Jersey no longer employs a pure governmental interest approach to resolve tort conflicts. Id. at 455, 460. Rather, to resolve conflict disputes arising out of tort, New Jersey utilizes the "most significant relationship" test set out in the Restatement (Second) of Conflict of Laws (the "Second Restatement"). Id. The most significant relationship test differs from a pure governmental interest approach in that the

3

former "does not focus solely on the state interests; instead, it directs courts to apply the law of the jurisdiction with the 'most significant relationship' to the issue before the court.  In making this determination, the court is required to consider all the contacts that each jurisdiction has with the issue."  Id. at 459 (citing Earl M. Maltz, Do Modern Theories of Conflict of Laws Work?  The New Jersey Experience, 36 Rutgers L.J. 527, 530 (2005)).

The New Jersey conflicts analysis can be broken down into a series of analytical steps.  The first step is to determine whether an actual conflict exists.  Id. at 460.  If it does, the analysis begins with the Second Restatement's presumption in personal injury cases that "the local law of the state of the injury will apply."  See id. at 455.  The presumptive choice is then "tested against the contacts detailed in section 145 and the general principles outlined in section 6 of the Second Restatement."  Id.  The presumption is overcome if another state has a more significant relationship to the parties or issues.  Id.  Otherwise, the presumption governs.  Id.

### A.    Actual Conflict

As noted, the first step in the conflicts analysis is procedural and requires the Court to determine whether an actual conflict exists between the relevant laws of New Jersey and Virginia.  The Court will find an actual conflict between New Jersey and Virginia law if there is "a distinction between them."  See id. at 460 (internal quotation marks omitted) (quoting Lebegern v. Forman, 471 F.3d 424, 430 (3d Cir. 2006)).

New Jersey follows a modified comparative negligence regime.  According to the New Jersey rules, a plaintiff's own negligence does not bar recovery provided the plaintiff's negligence is not greater than the negligence of the defendant or defendants.  N.J. Stat. Ann. § 2A:15-5.1.  In such a case, a plaintiff's damages are simply diminished by the percentage of

negligence attributable to him.  Id.

By way of contrast, Virginia adheres to the doctrine of contributory negligence.  O'Neil v. Windshire Copeland Assocs., 197 F. Supp. 2d 507, 512 (E.D. Va. 2002).  This doctrine does not allow tort recovery where a plaintiff negligently causes or contributes to his own injuries. Smith v. Virginia Elec. & Power Co., 129 S.E.2d 655, 659 (Va. 1963) (citing Watson, Adm'x v. Virginia Electric and Power Co., 100 S.E.2d 774, 778 (Va. 1957)).  Virginia has made clear that courts applying its law should not "undertake to balance the negligence of the respective parties for the purpose of determining which is most at fault."  Id. (citing Nehi Bottling Co. v. Lambert, 196 Va. 949, 955 (Va. 1955)).  Because a negligent plaintiff may recover against a negligent defendant under the tort law of New Jersey but may not recover against that same defendant under Virginia law, there is clearly a distinction between the two.  Accordingly, the Court determines that the laws of Virginia and New Jersey conflict on the issue of damages, rendering appropriate the substantive conflicts analysis to which the Court now turns.

**B.  Presumptively Applicable Law**

In personal injury cases, there exists in New Jersey a presumption that "the local law of the state where the injury occurred determines the rights and liabilities of the parties . . . ."  P.V., 962 A.2d at 459 (citing Restatement (Second) Conflict of Laws § 146).  In this case, the Amended Complaint alleges that Mr. Buccilli was injured at the Lorton Station in Virginia. Thus, the point of departure in this case is the presumption that Virginia law governs.[2]

_____

[2]  This is so despite Plaintiff's observation that New Jersey has abandoned the lex loci delicti rule.  Although New Jersey conflicts analysis no longer automatically applies the law of the place where the tort was committed, the Second Restatement presumption to which New Jersey adheres is predicated upon the intuition that "the state in which the injury occurs is likely to have the predominant, if not exclusive, relationship to the parties and issues in the litigation."

5

This presumption applies with respect to the instant damages issue unless the Court determines that a different state has a more significant relationship to the occurrence and the parties when analyzed in light of the principles articulated in section 6 of the Second Restatement.  Only if this is so, will the presumption that Virginia law applies yield.

**C.    Relevant Contacts**

In determining whether New Jersey has a more significant relationship to the litigation, the Court must consider the contacts listed in section 145 of the Second Restatement, namely: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered.  Id. at 458 (citing Restatement (Second) Conflict of Laws § 145(2)(a)-(d)).

In this case, Virginia is both the place of Plaintiff's alleged injury and the place of the allegedly wrongful conduct.  Ordinarily, where "both conduct and injury occur in a single jurisdiction" the local law of that state will apply.  Id. at 462 (citing Fu v. Fu, 733 A.2d 1133 (N.J. 1999)).  "That is so because 'a state has an obvious interest in regulating the conduct of persons within its territory and in providing redress for injuries that occurred there.'"  Id.  These contacts thus indicate a strong connection between this case and the Virginia Commonwealth.

Although it is true that the place of the injury becomes less important where it is "simply fortuitous," see id. (citing Fu, 733 A.2d at 1133), Plaintiff's argument that he sustained injury at

---

P.V. v. Camp Jaycee, 962 A.2d 453, 461 (N.J. 2008) (citing Restatement (Second) Conflict of Laws § 146 cmt. d.)); see id. (quoting Spinozzi v. ITT Sheraton Corp., 174 F.3d 842, 844 (7th Cir. 1999) ("[T]he simple old rules can be glimpsed through modernity's fog, though spectrally thinned to presumptions.")).

Lorton Station by pure happenstance strains credulity.  "The place of the injury is fortuitous when 'it bears little relation to the occurrence and the parties with respect to the particular issue.'"  Id. (citing Restatement (Second) Conflict of Laws § 145 cmt. e.).  In this case, Virginia bears a strong relationship to the negligence alleged in the Complaint.  Plaintiff consciously decided to drive to Virginia and embark upon a train at Lorton Station.  He sustained his injury while doing so.  Moreover, although Plaintiff argues that Amtrak operates hundreds of train stations across the country, it appears that the Lorton Station is the only station at which a Florida-bound Amtrak passenger traveling with his vehicle could possibly embark.  Thus, it cannot be said that the Lorton Station was in any way "an unanticipated detour" for Mr. Buccilli.  See id. at 462 (determining that an injury that occurred at a Pennsylvania summer camp was not a fortuity where the Plaintiff deliberately chose to attend a camp located in Pennsylvania.).

The third category of contacts to be considered includes the domicile, residence, nationality, place of incorporation, and place of business of the parties.  The Complaint alleges that Plaintiff is a domiciliary of New Jersey.  This allegation is sufficient to establish a contact with New Jersey.  The Complaint further alleges that Amtrak operates the Lorton Station in Virginia and that Axis Group is in the business of loading and unloading trains there.  Thus, although neither Defendant is domiciled in Virginia, their continuous business conduct in Virginia is sufficient to establish a contact with that commonwealth for purposes of the flexible New Jersey conflicts inquiry.  See Adkins v. Sogliuzzo, No. 09-1123, 2010 WL 502980, at *4 (D.N.J. Feb. 9, 2010) ("A state has an interest in the litigation where a corporation that is a resident of that state is a party, even if that corporation is not a domiciliary."); P.V., 962 A.2d at 462 (observing that the Second Restatement's "use of the term 'domiciliary' when referring to

corporations is imprecise."); <u>see also</u> <u>Am. Employers' Ins. Co. v. Elf Atochem N. Am., Inc.</u>, 725 A.2d 1093, 1098 (N.J. 1999) (Depending upon the context, a corporation can be considered to be a resident of several states).

The fourth contact to be considered is the place where the parties' relationship is centered. As far as the allegations in the Amended Complaint are concerned, the parties appear to have a relationship solely at the Lorton Station in Virginia. Thus, the Amended Complaint points towards Virginia as the state in which the parties relationship was centered. The Amended Complaint does not indicate whether Mr. Buccilli proceeded to ride the train to Florida after sustaining his injuries. Even assuming Mr. Buccilli did ride Amtrak to Florida as he intended, the broadest characterization that the Court could possibly give to the parties' relationship would be to find that the relationship centered around each and every state through which Mr. Buccilli intended to travel on the Auto Train. As the Auto Train line does not run through New Jersey, the parties' relationship cannot be centered there.

To recap, New Jersey has one contact with this case as Mr. Buccilli's domiciliary state; whereas, Virginia has several contacts, stemming from its status as the place of the allegedly wrongful conduct, the place of the injury, a place where the Defendants continuously conduct business, and as the state in which the parties' relationship appears to be centered. From a quantitative perspective, then, New Jersey's contacts are clearly not sufficient to overcome the presumption that Virginia law applies. <u>See</u> <u>P.V.</u>, 962 A.2d at 460 (observing that the number of contacts with a particular state may be persuasive). At bottom, however, the New Jersey conflicts analysis embodies "a qualitative, not quantitative" approach. <u>See</u> <u>id.</u> (citing <u>Henry v.</u> <u>Richardson-Merrell, Inc.</u>, 508 F.2d 28, 32 (3d Cir. 1975)). Thus, the Court will now assess the

identified contacts in light of the principles articulated in section 6 of the Second Restatement.

**D.**     **Choice of Law Principles**

The choice of law principles articulated by the section 6 of the Second Restatement are: (1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interest of judicial administration; and (5) the competing interests of the states." Id. at 463 (citing Erny v. Estate of Merola, 792 A.2d 1208 (N.J. 2002)).

**1.**     **The Competing Interests of the States**

New Jersey has a legitimate interest in the fair compensation of New Jersey residents. See O'Connor v. Busch Gardens, 605 A.2d 773, 775 (N.J. Super. Ct. App. Div. 1992). New Jersey's comparative liability regime serves to "ameliorate the harshness" of the old contributory negligence regime by "mitigat[ing] the unfairness associated with the total bar to recovery." Schwarze v. Mulrooney, 677 A.2d 1144, 1148 (N.J. Super. Ct. App. Div. 1996) (internal quotation marks omitted) (quoting Suter v. San Angelo Foundry & Mach. Co., 406 A.2d 140 (N.J. 1979), superseded by statute on other grounds by, N.J. Stat. Ann. § 2A:58C-3a(2)). In so doing, the New Jersey rule affords a measure of protection to New Jersey tort victims. Mr. Buccilli is a citizen of New Jersey and thus New Jersey has an interest in the application of its comparative negligence scheme to protect Mr. Buccilli from what he believes is the unfairness posed by the Virginia regime.

On the other hand, Virginia has a legitimate interest in regulating the conduct of people and enterprises located in Virginia and otherwise deterring unsafe conditions there. See O'Connor, 605 A.2d at 775. Virginia's contributory negligence regime represents a policy choice to shield Virginia defendants from incurring liability to careless plaintiffs. Thus, Virginia

9

has an interest in the application of its law to Defendants who, although not Virginia citizens, regularly conduct business at a fixed physical site along a permanent railway located on Virginia soil.  From this vantage, the fact that Defendants are not incorporated in Virginia does not much dilute Virginia's strong interest in regulating conduct at the Lorton Station, where it can be presumed many Virginia citizens work and frequent for travel.  See P.V., 962 A.2d at 465-66 (noting that a defendant's "perennial presence and activity" in a particular state was "inextricably intertwined" with that state's interest in conduct regulation).

### 2.    The Interest of Interstate Comity

The interest of interstate comity seeks "to 'further harmonious relations between the states and to facilitate commercial intercourse between them.'"  Id. at 466 (quoting Restatement (Second) Conflict of Laws § 6 cmt. d.)  This interest requires the Court to query "whether application of a competing state's law would frustrate the policies of other interested states."  Id. (internal quotation marks omitted) (citing Fu, 733 A.2d at 1133).  In this case, the application of Virginia law to New Jersey residents who choose to come to Virginia to utilize a train located there will not greatly impair New Jersey's ability to protect the vast majority of New Jersey tort plaintiffs.  To the contrary, allowing New Jersey's comparative negligence doctrine to follow New Jersey citizens around the country and supplant local liability rules would constitute an "impermissible intrusion into the affairs of other states."  O'Connor, 605 A.2d at 775.  On the other hand,  making the selection of applicable tort law dependent upon the citizenship of the allegedly injured Auto Train passenger would greatly impair Virginia's ability to regulate conduct and promote safety at the Lorton Station by way of a cohesive tort system.  This is especially so here where it can be assumed that citizens of numerous states embark upon the

10

Auto Train line at Lorton Station.

### 3.    The Remaining Section 6 Principles

The parties do not argue, and the Court is not convinced, that the remaining section 6 principles indicate that New Jersey has any greater connection to this case or to the parties. Virginia's contributory negligence regime does not appear so complicated or arcane that the Court will experience any great difficulty with its application.  See P.V., 962 A.2d at 467 (citing Erny, 792 A.2d at 1208) ("[W]here . . . the contacts and principles of the Second Restatement lead inexorably to the conclusion that a particular state's relationship to the parties and issues is predominant, judicial administration considerations necessarily yield.").  Moreover, Mr. Buccilli has pointed to no reasonable expectation that New Jersey law would apply to his activities in Virginia.

In sum, Virginia is the state with the most significant relationship to the parties and occurrences in this case.  The majority of the contacts cut in favor of the application of the law of Virginia.  When analyzed in light of the Section 6 principles, the contacts point even more forcefully in this direction.  Thus, what little connection this case does have with New Jersey is not sufficient to overcome the presumption that Virginia law applies.

## III.    CONCLUSION

For the reasons expressed above, the Court will grant Defendants motion in limine for a declaration that the Commonwealth of Virginia contributory negligence rules apply to this case.


Dated:  2-17-2010                                        /s/ Robert B. Kugler
                                                        ROBERT B. KUGLER
                                                        United States District Judge

11